UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael Stringer,                                       Civil No. 04-4979  JNE/FLN

    Plaintiff,

v.                                                      **REPORT AND RECOMMENDATION**

Joe Cosgrove and Jeffrey Peterson,

    Defendants.

---

    Michael Hager for Plaintiff

    Richard Varco, Office of the Attorney General, for Defendants

---

**THIS MATTER** came before the undersigned United States Magistrate Judge for a hearing on May 19, 2006, on Defendant's Motion to Dismiss [#17]. This matter has been referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c).

## I. INTRODUCTION

Plaintiff Michael Stringer, a convicted sex offender, claims that Defendants Joe Cosgrove, the Assistant Warden of the Minnesota Correctional Facility ("MCF") in Rush City and Jeffrey Peterson, administrator of the Hearings Release Unit there, are responsible for Stringer extending his projected release date by 90 days in violation of his 4th, 8th and 14th Amendment rights. He also makes claims for false imprisonment and negligent imprisonment. Specifically, Stringer, alleges that Defendants are responsible for the Rush City MCF's decision to hold Stringer past his release date in May 2004 while he was imprisoned there after having his supervised release revoked for violating the terms of his conditional release. Stringer claims that

1

Defendants' reason for holding Stringer past his release date – their knowledge that Hennepin County was preparing a civil commitment petition on him – was not sufficient justification. The Defendants argue that they were justified in extending Stringer's PRD an additional 90 days because Stringer was considered a heightened public risk by virtue of the fact of Hennepin County's decision to seek his civil commitment as a sexually dangerous person.

In sum, this dispute is whether the Defendants unlawfully incarcerated Stringer between May 24, 2004 and August 19, 2004, at MCF-Rush City rather than release him to Hennepin County on June 4, 2004, for confinement at the Minnesota State Security Hospital in St. Peter. Defendants now seek dismissal of Stringer's claims pursuant to Fed. R. Civ. P. 12(b)(1) and summary judgment on his claims pursuant to Rule 56(b). With very few exceptions, the parties do not disagree on any of the material facts. Rather, they contest interpretation and application of legal principals to the facts.

As set forth below, the Court concludes that Defendants are entitled to judgment on several alternative grounds:  Stringer cannot state a proper claim pursuant to 42 U.S.C. § 1983, Stringer cannot establish a genuine issue of material fact to proceed with a claim pursuant to 42 U.S.C. § 1983, Defendants' are entitled to 11th Amendment immunity to the extent they are sued in their official capacities, Defendants are entitled to qualified immunity to the extent they are sued in their individual capacities, and Stringer has not pled a proper claim of violation of the 8th Amendment.

## II. FACTUAL SUMMARY

Stringer pled guilty to criminal sexual conduct in 2001 in Minnesota state court. He was given a 39-month sentence of confinement, a 10-year period of conditional release and

committed to the Custody of the Commissioner of the Minnesota Department of Corrections ("DOC"). *See* Exh. A to Affidavit of Jeffery Peterson. Stringer's 39-month sentence had two components, a "minimum term of imprisonment" and a "specified maximum supervised release term. *Id*. and Minn. Stat. § 244.101, subd.1 (2004). Stringer's 10-year period of conditional release was governed by Minn. Stat.§ 609.109, subd. 7 (2004). Stringer was subject to such conditions as "the commissioner of the Department of Corrections considers appropriate." *Id*. at subd. 7(b).

On February 23, 2004, Stringer was on supervised release. He was arrested that day for violating the terms of that release. *See* Peterson Aff. at Exh. C. On March 4, 2004, the Hearings Release Unit of MCF-Rush City revoked Stringer's supervised release and had him incarcerated for 90 days. *Id*. Stringer does not dispute that MCF-Rush City had the authority to make this decision and reincarcerate him. After serving this additional 90 days, Stringer was scheduled to be released on May 24, 2004. *Id.*

On March 1, 2004, the Minnesota DOC issued a new policy regarding Release Violators ("RV") for whom a county or the State showed their intent to initiate a civil commitment. *See* Hager Aff. at Exh. 1. The policy states that in such instances the "RV will not be released at their PRD. This filing for the purpose of Civil Commitment will cause the RV to be unavailable for release; the RV now faces a legal Court action that requires detention and bars release to the street." *Id*. It further states that, "[b]y Administrative directive, the RV will automatically have their PRD extended for 90 days from the date of the filing." *Id*.

Shortly before May 24, 2004, the Hearings and Release Unit ("HRU") of MCF-Rush City received confirmation of Hennepin County's intent to file a petition for civil commitment of

Stringer as a "Sexually Dangerous Person." Exh. D. to Peterson Aff. On May 24, 2004, the Hearing Officer of the HRU conducted a "non-appearance administrative review" of Stringer's case. *Id*. In the memorandum summarizing that review, the Hearing Officer wrote, "[b]ecause of subject's high risk to the public (he is a level 3 sex offender) and the pending civil commitment matter, HRU will extend subject's [projected release date] for 90 days." *Id.*

On May 28, 2004, Hennepin County filed a Request for an Order to Transport and Hold on Stringer which was granted by the Minnesota District Court on June 2, 2004. The Order directs the Hennepin County Sheriff to take Stringer into custody and transport him to the Minnesota Sex Offender Program, "[i]mmediately upon [Stringer's] parole from incarceration by the Minnesota Department of Corrections." *See* Defendants' Memorandum of Law, Attachment 2.

On June 4, 2004, Minnesota State Court issued a "First Pre-Trial Order and Order for Transportation and Temporary Confinement" in The Matter of Michael K. Stringer, File No. MH-PR-04-0497. *See* Hager Aff. at Exh. 2. The Order set August 30, 2004 for trial on the merits of the Petition for Judicial Commitment. *Id* at ¶¶ 1 & 2. The Order noted that Stringer was being held by DOC and directed that the Hennepin County Sheriff's Office transport Stringer "whenever necessary for the purposes of examinations, hearings, and trial...from the Minnesota Correctional Facility at Rush City, Minnesota to the site of the examination and hearings that occur before his release from custody there...." *Id.* at ¶ 12. The Order further orders that Stringer will be held at the St. Peter facility upon release from MCF-Rush City. *Id*. On August 19, 2004, MCF-Rush City released Stringer to the custody of Hennepin County and transported him to the Minnesota State Security Hospital in St. Peter. *See* Complaint at ¶¶13-15.

On June 10, 2004, Peterson wrote a letter to Stringer to respond to Stringer's letter of May 25, 2004, in which Stringer objected to his continued incarceration. In his letter, Peterson explained that on March 1, 2004, the Department of Corrections issued a new policy on projected release dates for "Release Violators pending Civil Commitment." *See* Michael Hager Affidavit at Exh. 3. Peterson stated that under the new policy, "if a local county has filed a document on a release violator, regardless of notification level, indicating their intent to act relative to Civil Commitment, then that release violator will not be released on their PRD." *Id*. Peterson further explained that "by administrative directive, the Release Violator" will automatically have their projected release dates extended for 90 days from the date of filing." *Id*.

During his deposition, Jeffrey Peterson testified that when he reviewed Stringer letters objecting to his extended incarceration, Peterson determined that the HRU's authority to extend Stringer's incarceration was based upon the information HRU had received about Hennepin County's intent to file a petition for civil commitment and was consistent with the DOC's new policy on release violators pending civil commitment. Exh. 6 to Hager Aff. At 5. In his affidavit, Peterson states that Stringer's projected release date of May 24, 2004, was "contingent upon and subject to, inter alia, considerations of public safety." Peterson Aff. at ¶6. Peterson also states that the March 1, 2004 DOC policy provides that "public safety...is better served by continued incarceration of sex offenders for whom a civil commitment has been filed than by permitting such offenders to be released, albeit without supervision, into the community." *Id*. at ¶9. Peterson indicates that it is his belief that the March 1, 2004 DOC policy instructed that sex offenders should be kept confined in correctional institutions, unless ordered, while civil commitment proceedings were pending. *Id*.

### III.  LEGAL ANALYSIS

A.      **Summary Judgment Standard of Review**

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-27 (1986).  Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 322-23.  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When considering a motion for summary judgement, a court should construe all evidence in favor of the non-moving party.  *Id.* at 255.  Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in a light most favorable to the non-moving party, and found no triable issue.  *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

B.      **Eleventh Amendment Immunity**

The Eleventh Amendment bars Plaintiff's claim to the extent he seeks monetary relief against Defendants in their official capacities.  The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Supreme Court has interpreted the Eleventh Amendment to prohibit suits in federal court against unconsenting states.  *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 72 (1996).  Section 1983 does not

override the states' Eleventh Amendment immunity.  *See Quern v. Jordan*, 440 U.S. 332, 342 (1979).

The Eleventh Amendment's immunity encompasses certain actions against state agents and instrumentalities.  *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).  A suit by a private party seeking to impose a liability which must be paid from the state treasury funds is barred by the Eleventh Amendment.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464 (1945) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants").

Here, Stringer filed suit against employees of the State of Minnesota in their official and individual capacities.  Because any compensatory award against Defendants acting in their official capacities would be paid out of the state treasury, the State of Minnesota is the real party in interest.  A suit for damages is forbidden even though individual officials are named as defendants because for purposes of the 11th Amendment, such a suit is construed as a suit against the state.  *Edelman v. Jordan*, 415 U.S. 651, 653, 94 S.Ct. 1347, 1356 (1974).  That is, a suit against a public official in his official capacity is a suit against "the official's office" and no different than "a suit against the State itself".  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).

Congress did not abrogate, and the Minnesota Legislature has not waived, Minnesota's Eleventh Amendment immunity concerning the legal claims raised by Plaintiff.  *See* Minn. Stat. § 1.05 (waiving immunity only for certain types of claims not presented here)*; see also DeGidio*

*v. Perpich*, 612 F.Supp. 1383, 1389 (D. Minn. 1985). Accordingly, the Court finds that to the extent Plaintiff seeks monetary relief against Defendants in their official capacities, his action is barred by the Eleventh Amendment, and that portion of the Complaint should be dismissed.

Plaintiff essentially concedes Defendants' argument regarding their 11th Amendment immunity by arguing that Defendants "fail to argue that they cannot be sued in their individual capacities and do not request dismissal in their individual capacities. Defendants admit that they are sued in their individual capacities." Plaintiff's Memorandum of Law at 10-11. Given the clarity of the law interpreting the 11th Amendment and the absence here of any argument or fact suggesting that the action here against state officials is not a suit against the State itself, the court concludes that to the extent the Defendants are sued in their official capacities, they are immune from suit under the 11th Amendment of the United States Constitution.

### C.     The Complaint Does Not Plead Defendants' Direct Personal Involvement

A complaint in a 42 U.S.C. §1983 action must contain allegations setting out a party's direct involvement in the alleged constitutional actions or the party's participation in a policy decision that created the unconstitutional actions or the party's participation in a policy decision that created the unconstitutional reason for the allegations. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). In the absence of direct personal involvement, the Complaint must claim that a defendant failed to properly train, supervise, direct or control the subordinate who in turn caused the alleged unconstitutional deprivation. *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989).

There are no allegations in the Complaint regarding Defendant Cosgrove other then the statement of fact that he was the Assistant Warden of MCF-Rush City. For this reason and because it is well-established that a prison warden is not liable for all events that happen in prison by virtue of his supervising position, Cosgrove is entitled to dismissal of the claims

brought pursuant to 42 U.S.C. § 1983. *See Martin v. Sargent*, 782 F.2d 1334, 1337 (8th Cir. 1985) (citing *Marchant v. City of Little Rock*, 741 F.2d 201, 204-05 (8th Cir. 1984)).

There is only one cryptic allegation in the Complaint against Jeffery Peterson, Executive Director of the Hearings and Release Unit and this is: "Peterson denied Stringer's complaint and kept him in custody at MCF-Rush City." *See* Complaint at ¶ 11. Even if this single cryptic allegation was sufficient to sustain an action under 42 U.S.C. § 1983 against Peterson, and it appears that it is not, *see Tilson v. Forrest City Police Department*, 28 F.3d 802, 806 (8th Cir. 1994), there is no genuine issue of material fact as to Peterson's lack of direct participation and therefore summary judgment is warranted.

The Complaint does not allege that Peterson participated in the creation of the March 1, 2004 DOC policy that was the basis for extending Stringer's release date. The unchallenged evidence is that Peterson did not make the decision to extend Stringer's release date; rather, this decision was made by the Hearing Officer, Chris Pawlek. Peterson Aff. at Exh. C. Peterson only reviewed the decision. *See* Hager Aff. at Exh. 3. There is no evidence that Peterson reviewed Pawlek's decision to extend Stringer's release date in any other role than as Pawlek's supervisor. And as noted above, there is no liability under a respondeat superior theory under §1983. *See, e.g., Marchant v. City of Little Rock*, 741 F.2d 201, 204-05 (8th Cir. 1984).

Nor is there any evidence that Peterson himself was directly responsible for maintaining Stringer in custody. In the absence of direct personal involvement, the Complaint must claim that a defendant failed to properly train, supervise, direct or control the subordinate who in turn caused the alleged unconstitutional deprivation. *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989).

9

Here, as stated above, there are no such allegations in Stringer's Complaint.

Thus to the extent the Complaint states a viable §1983 claim on the basis of Peterson's direct participation in the alleged constitutional violation, and it appears it does not, Defendants are entitled to summary judgment. To the extent that the Complaint attempts to allege a §1983 claim on the basis of Peterson's alleged involvement in development of a policy or on the basis of his supervisory responsibilities, Defendants are entitled to dismissal. The result, of course, is the same in either case.

### D. Qualified Immunity Bars a Suit Against Defendants in their Individual Capacities

Plaintiff's suit against the Defendants in their individual capacities is barred because the Defendants are entitled to qualified immunity. Qualified immunity shields government officials from suit for official acts if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A two-part test is used to determine whether a government official is entitled to qualified immunity. *See Rowe v. Lamb*, 130 F.3d 812, 814 (8th Cir. 1997). A court first must determine whether the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, the court must the decide whether the violated right was clearly established at the time the violation occurred. *Id.* The test in this second step is whether the constitutional principle at issue was so clearly established at the time of the alleged wrongdoing that a reasonable government official would have known that his or her action was constitutionally improper. *See Mazano v. South Dakota Dept. of Soc. Services*, 60 F.3d 505, 509 (8th Cir. 1995). For a constitutional right to be clearly established, the contours of the right must be sufficiently clear and specific that a reasonable

10

official would understand that what he is doing violates that right. *McMorrow v Little*, 103 F.3d 704, 706 (8th Cir. 1997). The test is not whether the action complained of was previously held to be unconstitutional, but rather was it "apparent" that the action taken was unlawful "in light of pre-existing law." *Andrew v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039 (1987).

A right is clearly established only if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202. *See also Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines"). Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). Thus, a precedential case need not be on all fours to clearly establish a constitutional violation, but it must be sufficiently analogous to put a reasonable officer on notice that his conduct is unconstitutional. *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

Stringer alleges that he had a constitutionally protected liberty interest in being released on his projected release date (PRD) of May 24, 2004 and that Defendants violated this Constitutionally protected interest when they decided to retain custody of him past his PRD. See Complaint at ¶18. The Complaint further alleges that the decision was made "without any factual basis" and "without statutory authority." *Id*. The Complaint also alleges that a reasonable official in Defendants' positions should have known that extending Stringer's PRD violated his constitutional rights. *Id*. As discussed below, first the Court concludes that Defendants did not violate any Constitutionally protected interest of Stringer's and second, even

11

if the Court were to conclude that Defendants violated Stringer's constitutional rights, the unlawfulness of their decision to extend Stringer's PRD was far from apparent.

In *Carillo v. Fabian*, the Supreme Court of Minnesota discussed at length the circumstances under which an inmate has a legitimate claim of entitlement to being released to parole on his supervised release date. *Supra,* 701 N.W.2d 763 (Minn. 2005). The Court held that in determining whether an inmate had a legitimate claim of entitlement to a PRD, i.e., a liberty interest, both the nature of the deprivation and the extent to which the deprivation departs from the basic conditions of the inmate's sentence must be examined. *Id* at 771.

The Court began its analysis with inmate Carillo's sentence and the statutory language providing for supervised release. The Court concluded that Minnesota's sentencing scheme consisting of a specified minimum term and a specified maximum term of supervised release equal to one-third of the executed sentence, assuming the defendant commits no disciplinary offense in prison, "there is a presumption from the moment that a court imposes a sentence that the inmate will be released from prison on a certain date." *Id*. (citing *see* Minn. Stat. §244.101 subd. 2.). Therefore, the Court concluded that an extension of an inmate's PRD because of a disciplinary violation is a significant departure from the basic conditions of the inmate's sentence. *Id*. at 773. And hence, the inmate has a protected liberty interest in his supervised release date that triggers a right to procedural due process. *Id*. The Court then examined the standard of proof for prison disciplinary hearings required to satisfy due process requirements.

Analysis of Stringer's "liberty interest" under the principals articulated by Minnesota's high court in *Carillo v. Fabian* does not lead to the conclusion that Stringer had a similar such liberty interest or that procedural due process (assuming there was a liberty interest) was

12

violated. First, Stringer's expectation of entitlement in his PRD of May 24, 2004, was far less definite than that of Carillo's. Release of a level III sex offender like Stringer is subject to far more stringent and numerous conditions than a general felony offender. *See* Minn. Stat. §609.3455 subd. 8. Hence the term "conditional release" for sex offenders rather than "supervised release" for other felony offenders. Thus unlike Carillo's PRD, which could be revoked only for violations of disciplinary rules issued by the DOC and could only be revoked for the exact amount of time specified for each violation, *see* Minn. Stat. 244.05, subd. 2, Stringer's PRD of May 24, 2004, was subject to significant discretion on the part of the DOC. *Schwartz*, 615 N.W.2d at 91 (decisions concerning revocation of a conditional release are within the DOC's discretion). Such discretion can encompass a decision to determine that an offender on conditional release "may be sentenced to "up to expiration of the sentence" if there is a "finding of risk to the public." *See Schultz v. Erickson*, 1993 WL 430337 (Minn. App., October 26, 1993) (citing Minn. R. 2940.3800(D)). Thus, in contrast to the holding in *Carillo v. Fabian*, where the Minnesota Supreme Court concluded that the relevant sentencing statute created a presumption of release, the laws governing release of sex offenders appear to create a presumption against release until certain conditions are met.

Here, the Hearing Officer decided it was necessary to extend Stringer's release date of May 24, 2004, for 90 days because Stringer was considered a public safety risk based upon Hennepin County's initiation of a civil commitment process. Peterson Aff. at Exh. D. This decision was consistent with and most likely determined by, the DOC's March 1, 2004 policy regarding Release Violators such as Stringer. This policy assumes that the pendency of a civil

commitment process is a sufficient basis on which to conclude that a Release Violator is a public safety risk.

The court concludes that a pending civil commitment petition is a sufficient factual basis on which the DOC may conclude that a RV poses a risk to the public. The decision to file a petition for a civil commitment is made by a county attorney or the Attorney General, not the Department of Corrections. It is reasonable for the Department of Corrections to adopt a policy that assumes that a petition for civil commitment of a sex offender is supported by a sufficient factual basis of the person's danger to the public to warrant an extension of the RV's release date for an additional 90 days. Indeed here, the outcome of the petition on Stringer was a finding that he was a "sexually dangerous person," and he was committed to the Minnesota Sex Offender Program. *See* Hager Aff. at Exh. 4. Accordingly, the Court concludes that in extending Stringer's release due to the DOC's March 1, 2004 Policy for Release Violators, was not improper given the scope of the Hearing Officer's discretion. *See State of Minnesota v. Schwarz*, 615 N.W.2d 85, 90 (Minn. App. 2000) (when considering the revocation of an offender's release, the court must determine whether there has been a clear abuse of discretion).

Finally, even if Stringer had a liberty interest in his PRD of May 24, 2004, that triggered procedural due process, Stringer has not established that the process which was afforded him was deficient. He complains that he was not given a hearing. However, where there are no contested facts such as here, the existence of Hennepin County's petition for a civil commitment as a sexually dangerous person, Stringer had no right to a hearing. *See U.S. v. Burkhart,* 588 F.2d 604, 607 (8th Cir. 1978) (reliable evidence need not be subject to cross-examination and confrontation in a parole revocation hearing)*; State v. Kelly,* 535 N.W.2d 345, 347 (Minn. 1995)

(due process does not require a hearing where petitioner has no alleged facts that if proved, would entitled him to the requested relief); *Ferguson v. State*, 645 N.W.2d 437, 446 (Minn. 2002) (no due process hearing required where only argumentative assertions, not facts are alleged). And while Stringer complains that the DOC had no new information on May 24, 2004, on which to find him a risk to public safety than it had on the day of his original release, he glosses over the obvious new fact: the conclusion of another and completely independent law enforcement agency that Stringer was a risk to public safety. Stringer provides no argument or authority to challenge this as a basis on which the DOC could decide that he was a risk to public safety.

Accordingly, the Court concludes that extension of Stringer's PRD did not violate any constitutional liberty interest, that it did not violate any procedural due process right and did not represent an abuse of the DOC's discretion.

### E.     No 8th Amendment Violation Occurred

As to inmates, the 8th Amendment protects them against deliberate exposure to any serious risk to their health or safety. *See e.g., Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979 (1994). Without providing any factual support, Stringer alleges that the extension of his PRD from March 24, 2004 to August 19, 2004, violated the 8th Amendment's prohibition against cruel and unusual punishment. *See* Complaint at ¶14. In opposing summary judgment on this claim, Stringer cites authority, which he argues, holds that the 8th Amendment precludes "overlong imprisonment to which a liberty interest applies." *Davis v. Hall*, 375 F.3d 703, (8th Cir. 2004). That case involved an inmate who a judge had *ordered* prison officials to release immediately for having served his sentence but who was kept incarcerated for another 57 days.

*Id*. Given the significant factual differences between the cases and because of the court's conclusions above, i.e, that Stringer had no liberty interest in his projected release date, *Davis v. Hall* has no relevance here.

Simply put, there are no allegations in the Complaint to support even a prima facie claim of an Eighth Amendment violation. Defendants are therefore entitled to summary judgment on this claim.

### F.     Any Remaining State Law Claims Should be Dismissed

Under 28 U.S.C. § 1367(a), a federal court may assert supplemental jurisdiction over state law claims when a federal claim is properly before the court. When, however, all federal claims have been dismissed, the Court has discretion to dismiss the remaining state claims. *See* 28 U.S. C. §1367(c)(3); *William v. Heartland Hosp. East*, 34 F.3d 605, 613 (8th Cir. 1994). A court's discretion as to whether to exercise supplemental jurisdiction over such remaining state law claims should be guided by the principles of judicial economy, convenience, fairness and comity. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139 (1966).

Given the early stage of this action, the complete absence of any federal claim or interest, and the fact that the remaining state law claims are claims against state officials, the court concludes that it is should decline to exercise supplemental jurisdiction.

## IV. CONCLUSION

Based upon the foregoing, **IT IS HEREBY RECOMMENDED** that Defendants Cosgrove and Peterson's Motion to Dismiss [#17] should be **GRANTED.**

DATE: August 24, 2006.                              s/ *Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **September 13, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **September 13, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.